IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**BENITA KAY BURDETTE,**

    **Plaintiff,**

    v.        **Civil Action No. 2:16-cv-01646**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

    **Defendant.**

## MEMORANDUM OPINION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits (DIB) under the Social Security Act. The parties consented to the undersigned United States Magistrate Judge ordering the entry of final judgement. Presently pending before this Court are Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 13) and Defendant's Brief in Support of Defendant's Decision (ECF No. 14). Benita Kay Burdette (hereinafter referred to as Claimant), applied for DIB on September 6, 2012, alleging disability beginning June 1, 2009. The claim was denied initially on January 25, 2013, and upon reconsideration on June 14, 2013. Thereafter, Claimant filed a written request for a hearing before an Administrative Law Judge (ALJ) on June 25, 2013. A hearing was held on September 11, 2014, in Charleston, West Virginia, before an ALJ. On October 9, 2014, the ALJ denied Claimant's application.

On October 9, 2014, Claimant filed a request for review of the hearing decision by the Appeals Council (AC). On December 15, 2015, the AC denied Claimant's request for review (Tr. at 1-6). The AC stated "We found no reason under our rules to review the Administrative Law

Judge's decision" (Tr. at 1) and "In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council" (Tr. at 2). On December 15, 2015, the AC made additional evidence received from Claimant part of the record (Tr. at 6). That evidence consists of the following exhibits:

| Exhibit 19E | Representative Brief – Hazel A. Straub dated Dated December 1, 2014 (9 pages) |
| --- | --- |
| Exhibit 25F | Medical Records – Capital Neurology dated September 17, 2014 (2 pages) |

Thereafter, Claimant filed a complaint with this Court pursuant to 42 U.S.C. § 405(g).

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2016). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the

performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2016). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the amended[1] alleged onset date of August 3, 2011 (Tr. at 40). The ALJ found that Claimant meets the insured status requirements of the Social Security Act through December 31, 2016. Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of cervical and lumbar degenerative disc disease, obesity, depression and anxiety (Tr. at 41). At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1. (*Id.*) The ALJ then found that Claimant has a residual functional capacity to perform work at the light exertional level (Tr. at 44).[2] The ALJ held that

---

[1] Claimant originally filed her application alleging disability beginning June 1, 2009. At the hearing, Claimant amended her alleged disability onset date to August 3, 2011 (Tr. at 58)
[2] Claimant can perform the exertional demands of light level work, or work which requires maximum lifting of twenty pounds occasionally and frequent lifting of ten pounds; she can sit up to six hours and stand and walk for up to six hours, in an eight hour workday. Claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl but can never climb ladders, ropes or scaffolds. She can frequently reach overhead with her left upper extremity. She must avoid concentrated (frequent) exposure to temperature extremes, wetness, humidity, vibration and hazards, such as moving machinery or unprotected heights. She is limited to simple, repetitive, routine tasks, with no more than frequent interaction with the public (Tr. at 44-45).

Claimant is unable to perform any past relevant work (Tr. at 46). The ALJ held that transferability of job skills is not an issue in this case (Tr. at 47). The ALJ held that Claimant could perform jobs such as: a hand packer, mail room clerk and assembler (Tr. at 48). On this basis, benefits were denied. (*Id.*)

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

## Claimant's Background

Claimant was born on February 20, 1962 (Tr. at 59). Claimant obtained a GED. (*Id.*) Claimant testified that she is 5'10" tall and weighed 240 pounds. (*Id.*) Claimant lives with her husband (Tr. at 73). Claimant has her driver's license.

### The Medical Record

The medical record addressing Claimant's lower back pain, left leg pain, left arm pain and lumbar degenerative disc disease will be discussed below. The undersigned remands this matter for reconsideration as a result of the new and material evidence admitted by the AC. Therefore, medical records pertaining to other impairments will not be discussed at this time.

### Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ failed to accord adequate weight to the opinion of Laberta Salamacha, M.A. (ECF No. 13). Claimant argues that the ALJ's decision is not based on substantial evidence because the ALJ failed to consider Claimant's lower extremity radiculopathy and the resulting limitations in the residual functional capacity (RFC) assessment. Defendant asserts that substantial evidence supports the ALJ's decision to give little weight to Dr. Salamacha's opinion (ECF No. 14). Defendant avers that the ALJ captured all of Claimant's credible physical limitations in the RFC.

### Additional Evidence submitted to the Appeals Council

Additional evidence will be considered by the AC if it is new and material and relates to the period on or before the ALJ hearing decision. See 20 C.F.R. §§ 404.970(b) and 416.1470(b). SSA has issued HALLEX 1-3-3-6 to clarify when additional evidence is new and material. According to the HALLEX, this means the evidence is:

1. Not part of the record as of the date of the ALJ decision;
2. Relevant, i.e., involves or is directly related to issues adjudicated by the ALJ; and
3. Relates to the period on or before the date of the hearing decision, meaning it is (a) dated before or on the date of the hearing decision, or (b) postdates the hearing decision but is reasonably related to the time period adjudicated at the hearing.

New evidence, which is first submitted to the AC, is part of the record which goes to the

district court for review. This is true whether the Appeals Council reviews the case or not. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 44 Soc. Sec. Rep. Serv. 248, Unempl. Ins. Rep. (CCH) (11th Cir. 1994).

It is not the role of the Court to search for evidence and articulate for the ALJ's decision which the ALJ himself did not articulate. *See Rhinehardt v. Colvin*, No. 4:12-CV-101-D, 2013 U.S. Dist. LEXIS 75948, 2013 WL 2382303, *2 (E.D.N.C. May 30, 2013) (citation omitted) ("If the ALJ fails to explain why an impairment does not meet the listing criteria, the decision is deficient."); *Tanner v. Astrue*, C/A No. 2:10-1750-JFA, 2011 U.S. Dist. LEXIS 105731, 2011 WL 4368547, *4 (D.S.C. Sept. 19, 2011) (stating "if the ALJ did not rationally articulate grounds for her decision, this court is not authorized to plumb the record to determine reasons not furnished by the ALJ"). In *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013), the Fourth Circuit stated that a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. "If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Id.* (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S. Ct. 1598, 84 L. Ed 2d 643 (1985)).

While the ALJ is required to weigh the relevant medical opinions, he "need not discuss every shred of evidence in the record," and is under no duty to explicitly refer to each exhibit. *Reynolds v. Colvin*, 2014 WL 2852242, at *21 (S.D. W.Va. Aug 19, 2014), *adopted by* 2014 WL 4852250 (S.D. W.Va. September 29, 2014; *McGrady v. Astrue*, 2011 WL 4828884, at *20 (N.D. W.Va. September 16, 2011) (quoting *Mays v. Barnhart,* 227 F. Supp. 2d 443, 448 (E.D. Pa. 2002), *aff'd* 78 F. App'x 808 (3d Cir. Oct. 27, 2003)) ("[t]he ALJ is not required to give an exhaustive discussion of all the exhibits. 'Consideration of all the evidence does not mean that the ALJ must

explicitly refer to each and every exhibit in the record.'").

When read in combination with the applicable regulation, *Wilkins v. Secretary*, 953 F.2d 93 (4th Cir. 1991), reveals that a claimant need not show good cause when submitting new evidence to the Appeals Council:

> A claimant seeking a remand on the basis of new evidence under 42 U.S.C.A. § 405(g) (West 1983) must show that the evidence is new and material and must establish good cause for failing to present the evidence earlier. There is no requirement that a claimant show good cause when seeking to present new evidence before the Appeals Council.

*Wilkins*, 953 F.2d at 96 n.3; *see also* 20 C.F.R. § 416.1471(b) (2014). Instead, "[t]he Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" *Wilkins*, 953 F.2d at 95-96 (quoting *Williams*, 905 F.2d at 216.) Evidence is new "if it is not duplicative or cumulative." *Id.* at 96 (citing *Williams*, 905 F.2d at 216). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Id.* (citing *Borders v. Heckler*, 777 F.2d 954, 956 (4th Cir. 1985)).

## Listing 1.04

The evidence admitted into the record by the AC relates to Claimant's alleged impairments of cervical and lumbar degenerative disc disease. These impairments must meet criteria for Listing 1.04. Listing 1.04 requires the following:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising

>test (sitting and supine);
>
>OR
>
>B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
>OR
>
>C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

## Discussion

The ALJ held that Claimant has a history of low back pain "that apparently became worse in August 2011" (Tr. at 41). The ALJ found that "magnetic resonance imaging (MRI) testing of the lumbar spine performed at that time revealed degenerative disc disease at L3 to L5 with focal annulus tear and left lateral disc protrusion." (*Id.*) The ALJ noted that upon physical examination in October 2011, Claimant "showed that range of motion of the back was significantly limited in all directions with accompanied discomfort in the low back region." Claimant performed straight leg raises without difficulty or complaint. Claimant's muscle tone was normal and neurological examination demonstrated good strength in both lower extremities, symmetric reflexes and no sensory disturbance (Tr. at 41-42). The ALJ stated that Claimant was treated with physical therapy and was referred to pain management but she lost her insurance (Tr. at 42). After reestablishing her insurance in March 2013, an MRI of her lumbar spine, at that time, showed mild facet degenerative disease at L5-S1 unchanged. (*Id.*) The ALJ noted that "There was facet degenerative disease at L4-L5 with small annular tear on the left." There was no disc herniation. The ALJ stated "At L3-L4, there was a small annular tear on the left without obvious disc herniation."

The ALJ found that "MRI testing of the cervical spine revealed left paracentral/left foraminal disc protrusions at the C5-C6 and C6-C7 levels producing narrowing of the left neural foramina, but no significant spinal stenosis." (*Id.*) Upon physical examination in July 2013, Claimant performed positive straight leg raising on the left but no sensory loss. The ALJ held that "The claimant apparently received a lumbar injection at that time, but there is no further evidence of treatment until October 2013 (Exhibit 8F) when examination showed full lower extremity muscle strength, normal spine range of motion and negative straight leg raising." (*Id.*)

The ALJ found that Claimant experienced some left upper extremity weakness, but no sensation or reflex loss. The ALJ provided that Claimant "apparently received a short course of physical therapy at that time (Exhibit 11F) but again lost her insurance." The pain management specialist reported that Claimant ambulated without difficulty.

The ALJ held that "The claimant received cervical, lumbar and hip injections in 2014 [] apparently without significant relief of pain. There is no evidence of any treatment or musculoskeletal examinations since May 2014, and no evidence that the claimant's spinal impairments meet the criteria of this listing." (*Id.*)

In discussing Claimant's credibility, the ALJ held:

> It is acknowledged that the claimant has severe impairments which cause limitations on her ability to perform work-related activities. However, having reviewed the record in its entirety, the Administrative Law Judge has reservations as to whether the claimant's assertions concerning her impairments, and their impact on her ability to work, can be considered fully credible The record fails to provide any objective medical evidence that the claimant's impairments are as limiting as her hearing testimony indicates.
>
> Although the claimant has asserted that she exhibits significant impairments, the totality of the evidence fails to support the existence of any significant pathology capable of producing such severe and debilitating limitations as alleged by the claimant. While it is acknowledged that this is a "pain case," there is nothing in the

9

> medical evidence that supports the claimant's allegations of disabling pain. The record fails to show the claimant requiring any current emergency room treatments, hospitalization, significant active treatment or significant office care other than for routine maintenance and there have been no significant increases or changes in prescribed medications reflective of any uncontrolled condition. Furthermore, the record reveals no significant evidence of neurologic compromise which would affect the claimant's ability to stand, walk or sit to the degree alleged. The medical evidence has shown only moderate degenerative disc disease and there is no electrodiagnostic evidence that supports upper or lower extremity radiculopathy (Tr. at 45).
>
> …
> There is no evidence of loss of motor strength, gait dysfunction or mental limitations…" (Tr. at 46).

Claimant argues that the ALJ "failed to discuss much of the record that supported the Plaintiff's alleged limitations resulting from her lumbar disc disease and radiculopathy (ECF No. 13). Claimant asserts:

> In assessing the Plaintiff's RFC, the ALJ stated that "examinations generally show almost full extremity strength and normal gait." The ALJ pointed to August and October 2011 treatment notes Tr. 41 and an October 2013 treatment note. Tr. 45-46. In support of this conclusion; however, he failed to discuss much of the record that supported the Plaintiff's alleged limitations resulting from her lumbar disc disease and radiculopathy. In August 2011, the plaintiff was seen at Comprehensive Surgical Associates and complained of back pain radiating into the left leg. Tr. 325. In September 2011, she again complained leg. Tr. 311. The Plaintiff was seen in October 2011 and positive straight leg raise was observed. Tr. 305. On October 1, 2012, Dr. Kawash noted high blood pressure due to pain in her back radiating into her left leg. Tr. 428. On March 8 2013, the Plaintiff reported that her pain had significantly worsened over the past 2-3 months. She reported pain in the left buttocks, burning, and swelling in the left leg into the calf. She reported pain radiating into the groin and numbness and tingling into the toes. Tr. 378. On exam, pain was noted to the left SI joint and paravertebral muscles upon palpation. Further, straight leg raise was positive on the left, and there was weakness with dorsal flexion and pedal pushes on the left. Tr. 380. A week later, the Plaintiff was seen at CAMC emergency department. On exam, she had tenderness over the lower lumbar spine and across the sciatic nerve distribution on the left side. Straight leg raise on the left elicited pain shooting down the posterior leg. Assessment was low back pain with

10

left radiculopathy. Tr. 515. On April 9, 2013, pain was again noted to the left SI joint and paravertebral muscles upon palpation. Further, straight leg raise was positive on the left, and there was weakness with dorsal flexion and pedal pushes on the left. Tr. 376. On July 23, 2013, the Plaintiff had positive seated and supine straight leg raising on the left. She was tender to full left hip bursa and left SI palpation. Tr. 397. On August 27, 2013, the Plaintiff reported to Family Care that her left leg was getting worse, and she was losing more strength in the left foot. Tr. 530. On October 11, 2013, the Plaintiff was seen by neurosurgeon Rida Mizagri. The Plaintiff related to Dr. Mizagri that she had been walking with a limp for the last year or so. On exam, the Plaintiff was in mild distress. Dr. Mizagri observed that she walked with a limping gait, favoring the left leg with tenderness over the trochanteric area with positive Patrick test. Tr. 519-520. Finally, though the ALJ stated that there was "no evidence of any treatment or musculoskeletal examinations since May 2014," Tr. 42, the record reveals that the Plaintiff was examined in July 2014, at which time she indicated that she experienced difficulty walking, climbing stairs, dressing and bathing. On exam she had diminished left pedal pulse, tenderness of the left lateral hip, and her left foot appeared to be slightly dusky compared to the right foot. Tr. 585-586. (ECF No. 13).

In response, Defendant asserts that there is no requirement that an ALJ must discuss every piece of medical evidence (ECF No. 14). The ALJ found that Claimant saw her treating physician on October 2013, March 2014 and June 2014 for follow-up from thyroid cancer and denied any anxiety or depression or concentration issues." (*Id.*)

### Exhibit 25F

The Appeals Council admitted Claimant's medical records from Capital Neurology dated September 17, 2014, as Exhibit 25 F (Tr. at 637-638). Claimant's treating neurologist, Rida Mazagri, M.D., provided a summary of an evaluation of Claimant conducted on September 17, 2014. Dr. Mazagri stated:

> Ms. Burdette is a 52-year-old female with a history of lower back pain, left leg pain as well as neck and left arm pain. The patient has been treated over the last several months with multiple modalities to include multiple steroid injections by Dr. Saldanha, continued to be symptomatic and her main symptom is back pain and the left leg pain involving the hip, back of the thigh, calf to the foot[.] Back

> pain seems to be worse with daily activity, as well as leg pain, pain associated with tingling and numbness to involve the same distribution, on and off. Feels weakness in the left leg.
> …
> At this point, the patient continued to be symptomatic. I would like to obtain a repeat MRI, where her MRI [is] quite old. The patient will continue with Norco and given prescription of Voltaren and she will be reassessed again after the MRI of the lumbar spine as well as flexion and extension x-ray of the lumbar spine to assess for stability (Tr. at 637).

### Dr. Mazagri

Claimant was seen by Rida Mazagri, for hip joint pain on October 11, 2013 (Tr. at 527). The radiology report stated the impression was "negative left hip." (*Id.*) Dr. Mazagri noted that Claimant reported pain in her left arm, back, neck and left leg. Claimant's x-ray did not show any major arthritic change (Tr. at 521). Dr. Mazagri stated that Claimant walked with mild limping, favoring her left leg. She has restriction of neck movement in rotation and side bending, more so on the left side. *(Id.)* Claimant's straight leg raising was negative. The plan stated that Claimant would benefit from continuing treatment with Dr. Saldanha at the Pain Management Clinic with possible nerve block. (*Id.*) On October 16, 2013, Dr. Mazagri reported the same findings as on October 11, 2013 (Tr. at 521).

The ALJ did not state what amount of weight was given to Claimant's neurologist, Dr. Mazagri. Although the ALJ is not required to discuss every piece of evidence and every opinion, the ALJ simply cannot ignore evidence which contradicts his findings. The Appeals Council admitted Claimant's additional medical records from Dr. Mazagri with Capital Neurology, dated September 17, 2014, as Exhibit 25F. The additional evidence admitted by the Appeals Council reflect the duration of Claimant's symptoms and ongoing treatment.

Conclusion

The ALJ did not review the record as a whole and did not review Exhibit 25F. The additional records were admitted into evidence by the Appeals Council, therefore, it is considered new and material pursuant to HALLEX 1-3-3-6. Exhibit 25F is dated September 17, 2014, therefore according to HALLEX 1-3-3-6, the exhibit relates to the period on or before the date of the hearing decision, October 9, 2014. This Court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the ALJ's findings. The contents of the new evidence pertains to Claimant's cervical and lumbar degenerative disc disease which was relevant to the issues in this case.

The additional evidence may have affected the ALJ's determination that Claimant's severe impairments of cervical and lumbar degenerative disc disease do not meet a Listing (Tr. at 41). Additionally, there is a reasonable possibility that the additional evidence admitted into the record may have affected the weight given by the ALJ to medical opinions and may have prompted the ALJ to address any weight given to Dr. Mazagri.

For the reasons set forth above, the undersigned hereby find that this Court shall **GRANT** the Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 13) to the extent Plaintiff seeks remand pursuant to sentence four of 42 U.S.C. § 405(g) and **DENY** Defendant's Brief in Support of Defendant's Decision (ECF No. 14). The undersigned ORDERS that this matter is **REVERSED** and **REMANDED** for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and this matter is **DISMISSED** from the docket of this court.

The Clerk of this court is directed to provide copies of this ORDER to all counsel of record.

Enter: March 31, 2017

Dwane L. Tinsley
United States Magistrate Judge